UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

STEVEN PULLEN,

                                 Plaintiff,

               -against-

THE CITY OF NEW YORK, NYPD OFFICER
JONATHAN BAPTISTE, SERGEANT JOSE ROSA,
OFFICER RYAN SMITH, OFFICER SACHELY
GONZALEZ, SERGEANT WAIKIRIA VELEZ,
SUPERVISING POLICE OFFICER RICHARD ROE,
AND JOHN DOES.

                           Defendants.

-----------------------------------------------------------------------X

Index No.:

ECF CASE   25-CV-4428

JURY TRIAL DEMANDED

COMPLAINT

Plaintiff Steven Pullen, by and through his attorneys, Wylie Stecklow, PLLC, and for his Complaint against Defendants, hereby alleges the following conduct of Defendants, and states the following causes of action based thereon:

## I.   **PRELIMINARY STATEMENT**

1.    Plaintiff brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, as such rights are secured by those statutes and by the Constitution of the United States, and pursuant to New York City Administrative Code §§ 8-802 and 803(a-c).

2.    Plaintiff's claims for deprivation of federal civil rights, malicious prosecution, denial of constitutional right to fair trial, and malicious abuse of process accrued on June 11, 2024, when all criminal proceedings initiated by Defendants against Plaintiff were dismissed. Earlier in January 2024, Plaintiff had been arrested and charged with Operating a Motor Vehicle

While Under the Influence of Alcohol or Drug, a misdemeanor. Plaintiff's arrest and the charge subsequently brought against him were maliciously made and prosecuted by Defendants through their intentional and knowing misrepresentation of incriminating but untruthful witness statements, and also through their intentional and knowing withholding of truthful and exculpatory evidence, all concerning an incident on January 11, 2024 in which Plaintiff suffered injuries in an automobile crash caused by an officer within the New York Police Department operating a police vehicle.

3.      Plaintiff's false arrest, failure to intervene, and New York City Administrative Code causes of action, and his *Monell* claim, accrued on January 11, 2024, the date on which he was arrested despite at least one on-scene officer having personally seen that the police vehicle did not have its lights or sirens engaged prior to the crash and Plaintiff's lucid demeanor, including his clear eyes, steadiness on his feet, and intelligible speech.

4.      Defendants purposefully, negligently and/or recklessly misrepresented and withheld evidence in order to conceal their own derelictions of duty that had led the January 11, 2024, car crash to occur. As detailed below, Plaintiff's dash camera footage shows that the police vehicle that collided with him did not have its lights or sirens engaged.

5.      Defendants arrested Plaintiff in order to conceal their misfeasance and derelictions of duty on January 11, 2024, and to protect their jobs. Defendants arrested Plaintiff and caused him to be held in jail and appear in Court multiple times before the charge against him was dismissed.

6.      Plaintiff seeks herein redress for the constitutional injuries inflicted on him by Defendants under color of law.

- 2 -

## II.    JURISDICTION

7.    This action is brought in this Court pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

8.    This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all of Plaintiff's claims pursuant to New York City Administrative Code §§ 8-802 and 803(a-c) because all of those claims derive from the same nucleus of operative facts as Plaintiff's federal claims and are part of the same case or controversy that gives rise to the federal claims and causes of action here.

## III.    VENUE

9.    Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because a substantial part of the events giving rise to the claim occurred in this District.

## IV.    JURY DEMAND

10.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V.    THE PARTIES

11.    At all times hereinafter mentioned, Plaintiff Steven Pullen was a resident of Bronx County, in the City of New York, State of New York.

12.    At all times hereinafter mentioned, DEFENDANT, the CITY OF NEW YORK was a municipal corporation duly organized and existing under the laws of the State of New York.  The City is authorized by law to maintain a police department, the New York City Police

Department ("NYPD"), which is authorized to perform all functions of a police department per the applicable sections of the New York State Criminal Procedure Law.

13.     At all times hereinafter mentioned, Defendant NYPD Officer Jonathan Baptiste, Badge No. 22798, was a duly sworn police officer with the rank of Police Officer and is being sued in his individual capacity.

14.     At all times hereinafter mentioned, Defendant NYPD Sergeant Jose Rosa, Badge No. 5148, was a duly sworn police officer with the rank of Sergeant and is being sued in his individual capacity.

15.     At all times hereinafter mentioned, Defendant NYPD Officer Ryan Smith, Badge No. 21735, was a duly sworn police officer with the rank of Police Officer and is being sued in his individual capacity.

16.     At all times hereinafter mentioned, Defendant NYPD Officer Sachely Gonzalez, Badge No. 22911, was a duly sworn police officer with the rank of Police Officer and is being sued in her individual capacity.

17.     At all times hereinafter mentioned, Defendant NYPD Sergeant Waikiria Velez, Badge No. 2645, was a duly sworn police officer with the rank of Police Officer and is being sued in her individual capacity.

18.     At all times hereinafter mentioned, Defendant NYPD Supervising Officer Richard Roe and Defendants John Does were duly sworn police officers and are being sued in their individual capacities.

VI.    ALLEGATIONS OF FACT

19.    While driving in the Bronx in the early evening of January 11, 2024, Plaintiff
Steven Pullen's car was struck by a New York City Police Department radio motor patrol vehicle
driven by Defendant NYPD Officer Jonathan E. Baptiste.

20.    At the time of the collision, Mr. Pullen had
been driving Southbound on Sedgwick Avenue and
following other vehicles in front of him, he drove straight
passing through a green light at the intersection with West
Kingsbridge Road. The police vehicle had been traveling
Eastbound on West Kingsbridge Road and passing through
a red light at the intersection with Sedgwick Avenue when



*Figure 1: Diagram from Police Accident Report*

it struck the right side of Mr. Pullen's car. The crash caused the airbags in Mr. Pullen's car to
deploy and the vehicle to spin nearly 180 degrees. The car's right rear bumper and tire were
damaged.

21.    In the police accident report, written by NYPD Sergeant Jose Rosa, Officer
Baptiste falsely stated that his vehicle's turret lights and sirens were engaged.

22.    Video recording from Mr. Pullen's
dash camera indicates no lights and sirens could be
seen or heard from Mr. Pullen's point of view in the
moments before the collision. Unfortunately, audio
cannot be presented in this complaint.



*Figure 2: Screenshot from Mr. Pullen's Dash Camera One Second Before Crash, Time: 0:52*

23.    Officer Baptiste approached Mr. Pullen and asked if he was hurt. Mr. Pullen
replied that he was indeed hurt.

- 5 -

24.     Officer Baptiste then directed Mr. Pullen to go inside an ambulance that had arrived.

25.     Mr. Pullen complied and began receiving treatment from the paramedics.

26.     During this time, Mr. Pullen contacted his girlfriend, who quickly arrived on the scene with her father, the owner of the car that Mr. Pullen was driving at the time of the crash.

27.     Other officers also arrived on the scene. Upon information and belief, these officers included Defendants Sergeant Jose Rosa, Police Officer Ryan Smith, Police Officer Sachely Gonzalez, and Sergeant Waikiria Velez.

28.     The officers explained that the NYPD was required to tow the car that Mr. Pullen was driving and that they therefore had to search it first.

29.     Upon searching the vehicle, the officers claimed to smell marijuana.

30.     The officers then asked Mr. Pullen's girlfriend for her personal possessions that she had from the vehicle, which included a small amount of marijuana.

31.     The officers next said they would arrest Mr. Pullen and take him to a hospital to test for marijuana in his system.

32.     Meanwhile, Officer Baptiste told Mr. Pullen inside the ambulance that his eyes were "bloodshot red."

 33.    A screenshot from the officer's body camera footage indicates his eyes were not red, but rather white and clear. 

34.    Figure 3: Left,  screenshot from body camera as officer said Mr. Pullen's eyes were "bloodshot red." title: "axon_body_3_video_2024-01-11_1933_b24601780,b24601827-3.mp4" time: 01:07. Right,  zoomed-in version showing his eyes to be white and not bloodshot.

35.    The officer then placed Mr. Pullen in handcuffs behind his back, causing Mr. Pullen to feel confused and embarrassed.

36.    Mr. Pullen was then transported in police custody to New York-Presbyterian Allen Hospital in Manhattan for drug testing.

37.    At the hospital, Mr. Pullen asked nurse Candace Staines, who was at that time drawing his blood, "does this just show weed in my system or how long ago I smoked?"

38.    Ms. Staines replied, "That's the thing with it. You can't tell. It doesn't give you a time… Weed, depending on how much of a smoker you are… [stays in your system] at least a month… It doesn't give a timeline."

39.    Mr. Pullen said, "So this blood test won't tell if I was high off weed during the accident."

40.    Ms. Staines replied, "It will show if you have marijuana in your system."

41.    After the blood test, Mr. Pullen was brought to the 52nd Precinct, where he was held for several hours, fingerprinted, photographed, and eventually transferred to central booking.

42.    Mr. Pullen was then transferred to a jail cell behind the arraignment court.

43.    On January 12, 2024, at his arraignment, a criminal complaint was filed against Mr. Pullen in the Criminal Court of the City of New York, Bronx County with a singular charge, operating a motor vehicle while under the influence of alcohol or a drug.

44.    The complaint stated that Officer Baptiste "was driving a marked New York City Police Department radio motor patrol vehicle with lights and sirens activated."

45.    The complaint further states that Officer Baptiste observed Mr. Pullen "passing through an intersection with the green light but failed to yield the right of way to deponents' [sic] radio mobile patrol vehicle."

46.    Officer Baptiste presented false information to the Prosecutor including that the officer's vehicle had lights and sirens activated as the dash cam video clearly shows that the Defendant's lights and sirens were not engaged as it entered the intersection and "collided with [Mr. Pullen's] vehicle."

47.    Officer Baptiste presented false information to the Prosecutor including that Mr. Pullen had "red bloodshot, watery eyes, unsteady on his feet, and slurred speech."

48.     Audio from Officer Baptiste's body camera shows that Mr. Pullen's speech was not slurred as he was speaking clearly, coherently and intelligently.

49.     Mr. Pullen was eventually arraigned on this misdemeanor complaint, pled not guilty and was released on his own recognizance.

50.     Mr. Pullen was forced to return to court three times before the case was dismissed on June 11, 2024.

51.     Even though the criminal charges were dismissed, Mr. Pullen no longer had access to use the same vehicle he was operating at the time of the crash. As a result, he has been unable to continue his prior work as a food delivery driver. With his livelihood destroyed, Mr. Pullen was forced to relocate to North Carolina.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

52.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

53.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a violation of rights that are clearly established by the Constitution of the United States.

54.     All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

55.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

56.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

57.     The Defendant POLICE OFFICERS, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

58.     As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to his reputation and standings within his community.

59.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

SECOND CLAIM FOR RELIEF<br>
<strong>FALSE ARREST UNDER 42 U.S.C. § 1983</strong>

60.     The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

61.    Defendants, collectively and individually, while acting under the color of state law, engaged in conduct which constituted a violation of rights that are clearly established under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

62.    Each of the Individual Defendants, individually and collectively, intended to confine Plaintiff and did in fact cause Plaintiff to be confined without his consent.

63.    Each of the Individual Defendants, individually and collectively, caused Plaintiff to be confined by intentionally and knowingly misrepresenting evidence.

64.    Criminal proceedings initiated against Plaintiff Steven Pullen by the Defendants here were finally terminated in Plaintiff's favor on June 11, 2024.

65.    As a result of the Individual Defendants' actions, Plaintiff Steven Pullen was subject to an illegal, improper and false arrest by the Defendants and taken into custody and caused to be falsely detained, confined, and incarcerated without probable cause, privilege or consent.

66.    As a result of the foregoing, Plaintiff Steven Pullen was deprived of his liberty, required to attend court proceedings three times, denied fundamental constitutional rights, publicly embarrassed and humiliated, incarcerated, had his personal reputation and livelihood destroyed, lost employment opportunities, and was forced to relocate out of state.

<u>THIRD CLAIM FOR RELIEF</u>
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

67.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

68.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a violation of rights that are clearly established under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

69.    Defendants were directly and actively involved in the initiation or prosecution of criminal proceedings against Plaintiff Pullen, including by supplying and creating false information to be included in NYPD paperwork that was included in NYPD paperwork, providing falsely sworn information in accusatory instruments, and/or providing false information to the prosecutor.

70.    Each of the Individual Defendants, individually and collectively, commenced or continued, or caused the commencement or continuation of, criminal proceedings against Plaintiff and misrepresented and falsified evidence to the prosecutor and/or failed to make a full statement of the relevant evidence – including potentially exculpatory evidence – to the prosecutor.

71.    As Plaintiff Pullen had not engaged in any criminal conduct, Defendants lacked probable cause to initiate and continue criminal proceedings against Plaintiff Pullen.

72.    In an effort to cover up the misconduct of Defendant Baptiste, driver of the NYPD vehicle, the Defendants acted with malice in initiating criminal proceedings against Plaintiff Pullen.

73.    Notwithstanding Defendants' misconduct, the criminal proceedings against Plaintiff Pullen was favorably terminated on the merits.

74.    On June 11, 2024, the criminal proceedings against Plaintiff were terminated in his favor.

75.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff Pullen of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

76. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

77. As a result of the foregoing, Plaintiff Steven Pullen was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was incarcerated, had his personal reputation and livelihood destroyed, and was forced to relocate out of state.

FOURTH CLAIM FOR RELIEF
**DENIAL OF CONSTITUTIONAL RIGHT TO
FAIR TRIAL UNDER 42 U.S.C. § 1983**

78. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

79. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a violation of rights that are clearly established under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

80. Each of the Defendants investigated, in their official capacities, Plaintiff's claim of innocence in that he had the right of way, that Defendant Baptiste's vehicle did not have lights nor siren on immediately prior to the accident, that he was not under the influence of marijuana at the time of the accident.

81. Defendants' investigation revealed and made them actually aware that Plaintiff was in fact actually innocent of any wrongdoing or crime.

82. Defendant NYPD Officer Baptiste knowingly and intentionally transmitted false information to the New York County District Attorney by swearing in a criminal complaint that Plaintiff had committed the crime of Operating a Motor Vehicle While Under the Influence of Alcohol or Drug in violation of New York Penal Law § 1192(4).

- 13 -

83.     Defendant NYPD Officer Baptiste knowingly and intentionally transmitted false information to the New York County District Attorney by swearing in a criminal complaint that Officer Baptiste had his lights and sirens engaged prior to the crash.

84.     Defendant NYPD Officer Baptiste knowingly and intentionally transmitted false information to the New York County District Attorney by swearing in a criminal complaint that Plaintiff had bloodshot red eyes, was not walking properly, and had slurred speech.

85.     Defendants knowingly and intentionally transmitted false information to the New York County District Attorney concerning several crucial facts, including that Officer Baptiste had his lights and sirens engaged prior to the crash and that Plaintiff had bloodshot red eyes, was not walking properly, and had slurred speech.

86.     Information transmitted by a police officer and stating that a criminal defendant had bloodshot eyes and slurred speech is likely to influence the decision of any jury weighing the evidence presented in a prosecution of that criminal defendant.

87.     Defendants knowingly and intentionally failed to convey exculpatory information that was within their possession, and that conclusively established that Plaintiff was innocent in fact of any wrongdoing, despite their actual knowledge of such conclusive and exculpatory information.

88.     The failure to transmit conclusive and exculpatory information concerning a criminal defendant to the District Attorney is likely to influence the decision of any jury weighing the evidence presented in a prosecution of that criminal defendant.

89.     As a result of the foregoing, Plaintiff Steven Pullen was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was

incarcerated, was caused to feel unwell during the arrest processing, and had his personal reputation and livelihood destroyed.

<u>FIFTH CLAIM FOR RELIEF</u>
**MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983**

90.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if more fully set forth at length herein.

91.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a violation of rights that are clearly established under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

92.    Each of the Individual Defendants, individually and collectively, collected evidence and brought, or caused to be brought, criminal charges against Mr. Pullen through regular legal process.

93.    Each of the Individual Defendants, individually and collectively, caused Plaintiff to be indicted through regular legal process.

94.    Each of the Individual Defendants, individually and collectively, knowingly and intentionally transmitted false, misleading and/or incomplete information to the prosecutor concerning the crucial facts of the underlying incidents by withholding, among other evidence: (i) that Officer Baptiste's lights and sirens were not engaged at the time of the crash; (ii) that Mr. Pullen did not have bloodshot red eyes; (iii) that Mr. Pullen was walking properly, and (iv) that Mr. Pullen was not slurring his speech.  The withholding of each and all of these evidentiary facts was likely to and did influence the complaint against him.

95.    The real cause behind the arrest and prosecution of Mr. Pullen was to cover up that the automobile accident between Defendant Baptiste and Mr. Pullen was the fault of Defendant Baptiste.

96.    Defendants generated regularly issued process which they forwarded to the Criminal Court which falsely alleged Mr. Pullen had committed a crime and which resulted in Mr. Pullen having to appear and to defend against the false charge.

97.    The Defendants abused the legal process and brought criminal charges against Mr. Pullen, not because Mr. Pullen had committed any criminal act, but in order to cover up that the automobile accident between Defendant Baptiste and Mr. Pullen was the fault of Defendant Baptiste.

98.    Defendants' actions resulted in Mr. Pullen being forced to appear in court three times. This caused him to fear going to jail. He also suffered reputational harm and incurred pecuniary harms including lost wages and moving expenses.

## SIXTH CLAIM FOR RELIEF
### FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983

99.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if more fully set forth at length herein.

100.    Each Defendant who was present when Defendant NYPD Officer Baptiste violated Plaintiff's Constitutional Rights had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence by other officers.

101.    Specifically, each Defendant who was present when Defendant NYPD Officer Baptiste arrested and/or caused Plaintiff to be arrested without probable cause or a warrant and

had an affirmative duty, the ability and opportunity to intervene on behalf of Plaintiff and failed to intervene to prevent the unlawful arrest.

102.    Specifically, each Defendant who was present at the location of the accident had observed Mr. Pullen and that he did not have blood shot eyes, was not slurring his words and did not walk unsteadily.

103.    Specifically, each Defendant that was present in Defendant Baptiste's vehicle knew that the lights and siren were not activated immediately prior to the accident with Mr. Pullen.

104.    Specifically, each Defendant who was present during the time Mr. Pullen was being held, was aware the arrest was unconstitutional and had an opportunity to intervene to void the arrest.  Nonetheless, Plaintiff was detained, arrested, held in a holding cell and processed as an overnight arrest.

105.    As a result of the foregoing, Plaintiff's suffered serious injury, his liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated.

106.    As a direct and proximate result of such acts, Defendants, individually and collectively, deprived Plaintiff of his rights under the Constitutions and laws of the United States and of the State of New York.

<u>SEVENTH CAUSE OF ACTION</u>

**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-803
FAILURE TO INTERVENE**

107.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

108.    The acts of all Defendant Officers constituted conduct under color of the laws of the State of New York, under color of the laws, rules, and regulations of the City of New York,

and under color of the customs and usages of the City of New York and of the New York City Police Department.

109.    The failure of Defendant Officers to intervene, in violation of N.Y.C. Admin. Code § 8 − 803, caused Plaintiff to be deprived of the right, as it is granted and guaranteed to him by N.Y.C. Admin. Code § 8 − 802, to be secure in his person against unreasonable search and seizure.

110.    The failure of Defendant Officers to intervene caused Plaintiff to be deprived of the right, as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 − 802, to be secure in his person against the use of excessive force in connection with Defendants' search and seizure of Plaintiff.

111.    The failure of the Defendant Officers to intervene while other Defendant Officers unlawfully seized, searched and arrested the Plaintiff at the intersection of Sedgwick Avenue and West Kingsbridge Road, caused Plaintiff to be deprived of the right to be secure against such illegal acts as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 − 802.

112.    The failure of the Defendant Officers to intervene while other Defendant Officers continued to confine and seize Plaintiff at the 52nd Precinct, after they had actual knowledge that he was innocent in fact of all wrongdoing and in violation of N.Y.C. Admin. Code §§ 8 − 802, caused Plaintiff to be deprived of the right to be secure against such illegal acts as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 − 802.

113.    As a result of the foregoing, Plaintiff Steven Pullen was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was incarcerated, was caused to feel unwell during the arrest processing, and had his personal reputation and livelihood destroyed.

114.    As a result of the above conduct, the City of New York is liable, under New York City Administrative Code § 8-803(b) and under the doctrine of respondeat superior, for the conduct of the Individual Defendants, and for any damages the Individual Defendants caused by and through their conduct.

EIGHTH CAUSE OF ACTION

**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-802**
**DEPRIVATION OF RIGHTS**

115.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

116.    The acts of Defendant Officers constituted conduct under color of the laws, rules, and regulations of the City of New York, and under color of the customs and usages of the City of New York and of the New York City Police Department.

117.    The acts of Defendant Officers caused Plaintiff to be deprived of the right, as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 – 802, to be secure in his person against unreasonable search and seizure.

118.    The acts of Defendant Officers caused Plaintiff to be deprived of the right, as it is granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 – 802, to be secure in his person against the use of excessive force in connection with Defendants' search and seizure of Plaintiff.

119.    The Defendant Officers, while in uniform, unlawfully seized, searched and arrested the Plaintiff at the intersection of Sedgwick Avenue and West Kingsbridge Road in violation of N.Y.C. Admin. Code §§ 8 – 802.

120.    The Defendant Officers, while in uniform, continued to confine and seize Plaintiff at the 52nd Precinct after they had actual knowledge that he was innocent in fact of all wrongdoing, in violation of N.Y.C. Admin. Code §§ 8 – 802.

121.    As a result of the foregoing, Plaintiff Steven Pullen was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was incarcerated, was caused to feel unwell during the arrest processing, and had his personal reputation and livelihood destroyed.

122.    As a result of the above conduct, the City of New York is liable, under New York City Administrative Code § 8-803(b) and under the doctrine of respondeat superior, for the conduct of the Individual Defendants, and for any damages the Individual Defendants caused by and through their conduct.

NINTH CAUSE OF ACTION
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 AND *MONELL V. DEPARTMENT OF SOCIAL SERVICES*, 436 U.S. 658 (1978) AGAINST DEFENDANT CITY OF NEW YORK**

123.    The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

124.    Defendants Baptiste, Rosa, Smith, Gonzalez, Velez, Roe, and John Does while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

125.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York included, but were not limited to, (i) giving false information on police accident reports and in criminal complaints, and (ii) failure to discipline officers. These policies each resulted in the violation of Plaintiff Steven Pullen's constitutional rights as described herein. As a result of these policies, Defendant City of New York has tacitly authorized, ratified, and been deliberately indifferent to, the acts and conduct complained of herein.

126.    Support for the existence of an improper custom of giving false information and

the failure to discipline officers includes:

a.    A New York Times article in March 2018 reported on the results of its
investigation that found of 81 cases in which the Civilian Complaint Review
Board found an officer had lied, the New York Police Department pursued
"false statement" charges in just two of them. *Promotions Not Punishments,
for Officers Accused of Lying,*
*https://www.nytimes.com/2018/03/19/nyregion/new-york-police-perjury-
promotions.html*

b.    Another New York Times article in March 2018 found that on more than 25
instances since January 2015, judges or prosecutors found that a key element
of a New York City police officer's testimony was likely untrue. The purpose
of the lying was to either defend the use of unreasonable stops and searches
or simply convict people. The report further noted that the
"25 cases identified by The Times are almost certainly only a fraction of
those in which officers have come under suspicion for lying in the past three
years. That's because a vast majority of cases end in plea deals before an
officer is ever required to take the stand in open court, meaning the
possibility that an officer lied is seldom aired in public… Still, the cases
identified by The Times reveal an entrenched perjury problem several
decades in the making that show little sign of fading."

*'Testilying' by Police: A Stubborn Problem,*
*https://www.nytimes.com/2018/03/18/nyregion/testilying-police-perjury-new-
york.html?rref=collection%2Fsectioncollection%2Fnyregion&action=click
&contentCollection=nyregion&region=rank&module=package&version=hi
ghlights&contentPlacement=1&pgtype=sectionfront*

c.    A September 2019 article from *The New York Times* also reported
specifically that the previous July, "a judge in the Bronx said in a scathing
opinion that officers claim to smell marijuana so often that it strains
credulity, and she called on judges across the state to stop letting police
officers get away with lying about it."

*Officers Said They Smelled Pot. The Judge Called Them Liars,*
*https://www.nytimes.com/2019/09/12/nyregion/police-searches-smelling-
marijuana.html*

d.    Report from Latino Justice, dated April 2022, finding that despite an NYPD
policy on paper that "[i]ntentionally making a false official statement
regarding a material matter will result in dismissal from the Department,
absent exceptional circumstances," that the NYPD has "failed to take lying

by officers seriously, refusing to discipline officers in the face of incontrovertible evidence that they lied."

*Shielded from Accountability: How NYPD Officers Get Away with Lying to the CCRB,* https://www.latinojustice.org/sites/default/files/2023-08/CCRB%20Report_v4_4-9%20%2811%29.pdf

e.   A 2018 article on BuzzFeed News indicated that secret files revealed that from 2011-2015 at least 319 NYPD employees who committed offenses serious enough to merit firing were able to keep their jobs despite that many of the officers had lied, cheated, stole or assaulted New York City residents. "At least fifty employees lied on official reports, under oath or during an internal affairs investigation."

*Secret NYPD Files: Officers Who Lie And Brutally Beat People Can Keep Their Jobs,* https://www.buzzfeednews.com/article/kendalltaggart/secret-nypd-files-hundreds-of-officers-committed-serious

f.   Testimony from the New York Civil Liberties Union before the New York City Council, dated January 2009, stating that failure to discipline officers who have been found to have engaged in misconduct by the New York City Civilian Complaint Review Board, undermine NYPD and public safety. Specifically, the failure to discipline means that "police officers receive the very clear message that those who engage in misconduct may do so without fear of punishment."

*NYPD Disciplinary Practices in Cases of Police Misconduct,* https://www.nyclu.org/migrated-page/nypd-disciplinary-practices-cases-police-misconduct

127.   Evidence of the existence of an improper custom of giving false information about vehicle crashes to avoid responsibility exists, yet the ones that are reported are the incidents where the officers are caught.  These examples include:

a.   An NYPD officer allegedly lied about a police car accident that occurred in December 2023 and injured a motorcyclist, who was arrested and charged with reckless engagement and criminal mischief. The officer, who was in the passenger seat of the police car at the time of the accident, filed a collision report stating the motorcyclist drove into the police car, but video surveillance showed that the police car turned into the motorcyclist. The officer was charged for lying about the incident.

> *NYPD Officer Charged in Two Indictments: For Assaulting a Suspect, and*
> *For Lying About Patrol Car Striking Motorcyclist*
> *https://www.bronxda.nyc.gov/downloads/pdf/pr/2024/78-*
> *2024%20NYPD%20Kenny-Victoria-indicted.pdf*

b.  An NYPD commanding officer tried to cover up an August 2022 crash involving his NYPD-issued vehicle. The car was being driven by his girlfriend while he was in the passenger seat. Both had been drinking alcohol before the crash with a cab occurred. The officer, who faces criminal charges, was fired from the force.

> *NYPD Commander Fired For Trying to Cover Up Off-Duty Manhattan DWI*
> *Crash,*
> *https://www.nydailynews.com/2025/03/04/nypd-dwi-crash-cover-up-deputy-*
> *inspector-paul-zangrilli-fired/*

c.  An NYPD officer was driving an unmarked car in February 2019 when he approached a burglary suspect in his car who sped away. The officer claimed he suffered injuries as he drove out of the way, resulting in attempted assault charges against the suspect, but surveillance video showed the suspect's car was not close to hitting the officer. The officer later pled guilty on perjury counts.

> *NYPD Cop Admits He Lied About Being Struck By Suspect's Car During*
> *Arrest,*
> *https://nypost.com/2019/11/08/nypd-cop-admits-he-lied-about-being-struck-*
> *by-suspects-car-during-arrest/*

d.  An NYPD detective driving an unmarked NYPD SUV in October 2017 claimed he was stopped in traffic when a man walked into his vehicle, but video footage showed the detective slamming on the brakes of his moving SUV when he hit the man.

> *Pedestrian Hit by NYPD Car Plans to Sue After Learning Cop Allegedly Lied*
> *About the Crash,*
> *https://www.nydailynews.com/2017/12/19/pedestrian-hit-by-nypd-car-plans-*
> *to-sue-after-learning-cop-allegedly-lied-about-the-crash/*

e.  In April 2025, two NYPD officers allegedly followed a vehicle traveling in Manhattan that had been reported stolen until it crashed, resulting in a fire and the death of the driver. The officers allegedly left the scene and failed to report it. They were subsequently suspended.

> *2 NYPD Officers Suspended for Allegedly Leaving the Scene of Fiery Car*
> *Crash in Inwood*

*https://abc7ny.com/post/inwood-fatal-car-fire-2-nypd-officers-suspended-allegedly-leaving-scene-fiery-crash-manhattan-nyc/16123106/*

128.    Evidence of Defendants' prior misconduct and/or failure to appropriately discipline Defendants' prior misconduct, which otherwise may have resulted in the avoidance of the denial of Plaintiff Steven Pullen's constitutional and civil rights, includes:

a.   September 2024 decision by NYPD Police Commissioner to ignore CCRB's recommended penalty for Defendant Officer Baptiste following a finding that he abused authority by damaging a victim's property, improperly used his body-worn camera, and threatened a victim with the use of force. The ignored recommendation was charges and specifications, which are only recommended in the most serious allegations of misconduct[1] and will result in the initiation of a disciplinary trial at NYPD. An officer could be suspended or terminated if found guilty. Instead, the NYPD docked PO Baptiste 10 vacation days.

*Letter to NYC CCRB Executive Director Jonathan Darche, https://www.documentcloud.org/documents/25345443-202302857-tax970985-apu-final-documentspdf/*

b.   July 2023 allegation against Defendant Officer Baptiste, substantiated by the CCRB, for abuse of authority stemming from the improper use of a body-worn camera. *Complaint #202307088, July 2023 https://www.50-a.org/complaint/202307088*

c.   October 2023 allegation against Defendant Officer Baptiste, substantiated by the CCRB, for abuse of authority stemming from the improper use of a body-worn camera. *Complaint #202310198, October 2023 https://www.50-a.org/complaint/202310198*

d.   July 2021 allegation against Defendant Officer Rosa, substantiated by the CCRB, regarding the use of force with a vehicle and an untruthful statement he made to the CCRB. *Letter to NYC Police Commissioner Hon. Edward Caban https://www.documentcloud.org/documents/24097603-apureport2023-q3pdf/?mode=document*

e.   October 2020 allegation against Defendant Officer Rosa, substantiated by the CCRB, for abuse of authority. *Jose Rosa, https://www.50-a.org/officer/GH6B*

---

[1] https://www.nyc.gov/site/ccrb/complaints/complaint-process/police-discipline.page

f.  Defendant Officer Velez appears on an "Adverse Credibility" list, which are maintained by New York City District Attorneys, after she made statements in a June 2015 crash that were contradicted by surveillance video. The crash killed one New Yorker and left another brain dead.  These lawsuits resulted in $4,250,000 liability for the City of New York, and with Defendant Velez being identified as *Bronx DA names 75 NYPD members on 'naughty list' for shoddy police work, https://nypost.com/2019/10/07/bronx-da-names-75-nypd-members-on-naughty-list-for-shoddy-police-work/*

g.  Defendants Smith and Gonzalez have multiple complaints filed against them including a complaint of abuse of authority, 202306542, that was closed pending litigation and abuse of authority – threat of arrest, 202312041, that was closed due to budget cuts ("OMB PEG Directive Closure").

129.  Defendant City of New York has been deliberately indifferent to the need to prevent its officers from giving false statements and has failed to appropriately discipline those who have been found to have done so.

130.  Defendant City of New York knows to a moral certainty that its officers will have to give statements to prosecutors about alleged crimes they witness.

131.  Defendant City of New York knows to a moral certainty that its officers, while driving NYPD vehicles, will have motor vehicle accidents with civilians.

132.  Giving accurate statements to prosecutors is of the utmost importance to the imposition of justice.

133.  Accurately and fairly reporting the cause of accidents with civilians is important for the fair administration of justice and for fostering the concept of community policing and community-police relations.

134.  The foregoing customs, policies, usages, practices, procedures and rules of defendants City of New York constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff Steven Pullen.

135.    The foregoing customs, policies, usages, practices, and protocols of defendants City of New York and their officers were the direct and proximate cause of the constitutional violations suffered by Plaintiff Steven Pullen as alleged herein.

136.    The foregoing customs, policies, usages, practices, procedures and rules of defendants City of New York were the moving force behind the Constitutional violations suffered by Plaintiff Steven Pullen as alleged herein.

137.    As a result of the foregoing customs, policies, usages, practices, and protocols of Defendant City of New York, Plaintiff Steven Pullen suffered a violation of his constitutional rights, including Fourth Amendment violations, and was subjected to deprivation of federal civil rights, false arrest, malicious prosecution, deprivation of his right to fair trial, malicious abuse of process, and failure to intervene.

138.    Defendants Baptiste, Rosa, Smith, Gonzalez, Velez, Richard Roe, and John Does, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff Steven Pullen's constitutional rights.

139.    As a result of the foregoing, Plaintiff Pullen is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Steven Pullen demands judgment against the Defendants on each cause of action in amounts to be determined upon the trial of this action, inclusive of punitive damages and attorneys' fees, and inclusive of costs and disbursements of this action and inclusive of statutory interest on such damages, costs and fees, and such other relief as is appropriate under

the law, and that the Plaintiff recover the cost of the suit herein, including reasonable attorney's fees pursuant to 42 U.S.C. § 1983, 1988, and including reasonable attorney's fees and court costs pursuant to N.Y.C. Admin. Code §§ 8 – 805.

Dated: New York, New York
May 27, 2025

Yours, etc.,

WYLIE STECKLOW PLLC
Attorney for Plaintiff Steven Pullen
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
New York, NY 10019
(212) 566 8000
ECF@WylieLAW.com